# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:11CV374-MOC-DSC

| | |
|---|---|
| ROY F. WILLIAMS, | ) |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM AND RECOMMENDATION** |
| | ) **AND ORDER** |
| KENNY CHARLES E. HABUL | ) |
| AND CORNELIUS ONE, LLC, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss" (document #7) and the parties' associated briefs and exhibits. See documents ## 8, 12 and 15.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the subject Motion is ripe for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Defendant Kenny Charles E. Habul were former business partners in several ventures, including Defendant Cornelius One, LLC ("Cornelius One"). In January 2011, Plaintiff filed a lawsuit against Defendant Habul and several entities in the North Carolina Business Court, captioned Roy F. Williams v. Kenny Charles E. Habul et al., Civil Action No. 11-CVS-1050 (the "Business Court Litigation"). "Complaint" at ¶ 22 (document #1). The Business Court Litigation arose from multiple disputes between Plaintiff and Defendant Habul relating to their ownership interests in several business entities. With respect to Defendant Cornelius One, Plaintiff alleged that Defendant Habul made misrepresentations in connection with the sale of an interest in a real estate project for $300,000. Plaintiff asserted claims for securities fraud under North Carolina law and

claims for "derivative recovery" for Cornelius One. Plaintiff's allegations in the Business Court Litigation regarding his investment in Cornelius One are nearly identical to those in this case.

In February 2011, Plaintiff and Defendant Habul settled the Business Court Litigation. The terms of the negotiated settlement are documented in the Settlement Agreement and Release dated February 16, 2011 (the "Settlement Agreement").[1] All parties to this lawsuit are parties to the Settlement Agreement. "Settlement Agreement" at 8-9, Exhibit B to "Defendants' Brief in Support ..." (document #8).

Under the Settlement Agreement, Defendant Habul agreed to purchase Plaintiff's membership interests in certain entities for the total price of $1,018,797 (the "Payment") according to the following schedule: (a) $500,000 on or before February 18, 2011; and (b) $518,797 on or before April 4, 2011. Id. at ¶ 1. Paragraph 5 of the Settlement Agreement calls for Plaintiff to dismiss the Business Court Litigation after receiving the Payment: "Within 5 business days after Williams receives the full Payment, Williams shall dismiss the Civil Action with prejudice by filing a Notice of Dismissal with Prejudice." (emphasis supplied).

In paragraph 9 of the Settlement Agreement, Plaintiff agreed to a release of claims that is effective immediately upon his receipt of the Payment (the "Release"):

> Effective upon receipt in full of the Payment (the "Effective Date"), Williams, on his own behalf and on behalf of his companies, affiliates, subsidiaries, divisions successors and assigns (the "Williams Parties"), hereby releases and discharges Habul, Kim Habul, SunEnergy 1, SunEnergy Roofing, Monster Solar, SunEnergy Asheville, Group Three, Cornelius One, Greenbay and any other entity in which Habul or Kim Habul owns an interest, and each of their parents, affiliates, subsidiaries, and divisions,

---

[1] This Court can properly consider the Settlement Agreement without converting the motion to dismiss to a motion for summary judgment. Philips v. Pitt County Memorial Hospital, 572 F.3d 176, 180 (4th Cir. 2009) (noting that Court may consider documents on a motion to dismiss "so long as they are integral to the complaint and authentic"). The Settlement Agreement is referenced and discussed in the Complaint.

2

> including each of their current and former directors, officers, shareholders, employees, agents, and counsel, and all of their successors and assigns (the "Habul Parties") from any and all causes of action, suits, claims, demands, liabilities, and obligations whatsoever in law or in equity (including derivative claims on behalf of any entity) arising at any time prior to and through the Effective Date, whether the same or whether the facts on which the same may be based are now known or unknown, which they ever had, now have or hereafter can, shall, or may have for, upon or by reason of any matter, cause, or thing whatsoever, including, but not limited to, all claims that were or could have been alleged in the Civil Action, all claims for any ownership interest in, payments from or corporate opportunities involving any of the Habul Parties, all claims arising from any transaction between any of the Williams Parties and any of the Habul Parties and all claims relating to any entities or businesses in which any of the Williams Parties and any of the Habul Parties have been jointly involved. Provided, however, that the foregoing release shall not apply to any obligations specifically set forth in this Settlement Agreement.

(emphasis added). Plaintiff acknowledges in his Complaint that the scope of the release in the Settlement Agreement covers the claims he asserts in this case. Complaint at ¶ 22.

On March 18, 2011, weeks after receiving the Payment from Defendant Habul, Plaintiff moved to enforce the Settlement Agreement in the Business Court Litigation. In his motion to enforce, Plaintiff acknowledged that "the major financial terms of the Settlement Agreement have been performed ahead of schedule." "Plaintiff's Motion to Enforce Settlement Agreement" at ¶ 2., Exhibit C to "Defendants' Brief in Support ..." (document #8). Plaintiff then asked the Business Court to enforce a provision of the Settlement Agreement that, according to Plaintiff, required Defendant Habul's company to employ electrician Stepan Groninger for six months (the same alleged breach he asserts here as excusing him from honoring the release in the Settlement Agreement). Complaint at ¶ 22. Defendants opposed this motion on the basis that Groninger agreed voluntarily to end his relationship with Habul's company and was now working for Plaintiff.

On April 4, 2011, the defendants in the Business Court Litigation, by cross-motion for enforcement, asked the Business Court to require Plaintiff to comply with the terms of the

3

Settlement Agreement and dismiss the complaint with prejudice. Because Plaintiff had received (and so admitted) the full Payment on March 4, 2011, Defendants contended that under Paragraph 5 of the Settlement Agreement, Plaintiff should have dismissed his lawsuit by March 11, 2011.

On June 15, 2011, the Business Court denied Plaintiff's motion to enforce and granted Defendants' cross-motion to enforce the Settlement Agreement. The Business Court ordered:

> The plain language of Paragraph 5 [of the settlement agreement] unambiguously requires Plaintiff to file a Notice of Dismissal with Prejudice within five business days after receiving full payment. Plaintiff received full payment from Defendants in March 2011. Plaintiff has represented to the Court his willingness to file the Notice of Dismissal with Prejudice called for in Paragraph 5 of the Settlement Agreement but for the Defendants' alleged breach. The Court having resolved this matter against Plaintiff and in favor of Defendants, Plaintiff shall, therefore, file a Notice of Dismissal with Prejudice as provided in the Settlement Agreement within five (5) business days of the entry of this Order.

Business Court Order at p. 4 (omitting citations), Exhibit D to "Defendants' Brief in Support ..." (document #8). Plaintiff appealed this decision and has not dismissed the Business Court Litigation.

Notwithstanding the Release, on August 1, 2011, Plaintiff filed this lawsuit against Defendants, reciting the same factual allegations he set out in his Complaint in the Business Court Litigation. Plaintiff also pleads the same causes of action that the Business Court ordered dismissed—claims for securities fraud under North Carolina law and claims for derivative recovery on behalf of Defendant Cornelius One. This lawsuit also includes a claim for securities fraud under federal law that is based on allegations identical to those in the Business Court Litigation.

On August 24, 2011, Defendants filed their Motion to Dismiss. Defendant's Motion has been fully briefed and is ripe for determination.

4

## II. DISCUSSION

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their

truth and then determine whether they plausibly give rise to an entitlement to relief.  Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed.  Id., quoting Fed. R. Civ. P. 8(a)(2).  In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible.  Id. at 1951-52.

The Settlement Agreement is a contract governed by North Carolina law. Norkunas v. HP Hospitality, LLC, 2010 U.S. Dist. LEXIS 125610, at *6 (W.D.N.C. Nov. 29, 2010); June 15, 2011 Bus. Ct. Order at 2 (citing Harris v. Ray Johnson Constr. Co., 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000)).  "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties." Norkunas, 2010 U.S. Dist LEXIS 125610 at *6 (quoting Piedmont Bank & Trust Co. v. Stevenson, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (1986)); see also June 15, 2011 Bus. Ct. Order at 2.

The language of Paragraph 9 of the Settlement Agreement is clear and unambiguous.  The contract provides that Plaintiff has released the claims he asserts in this lawsuit.  The Release states that it is "[e]ffective upon receipt in full of the Payment."  Plaintiff acknowledges that he received the Payment – the only condition precedent to the Release.  Accordingly, the Release prohibits Plaintiff from proceeding with this Complaint.  See VF Jeanswear Limited Partnership v. Molina, 320 F. Supp. 2d 412, 422 (M.D.N.C. 2004) (enforcing unambiguous release language); Hardin v.

KCS International, Inc., 199 N.C. App. 687, 699, 682 S.E.2d 726, 735 (2009) (same).

Plaintiff alleges that he can avoid the Release on the theory that Defendant Habul has not complied with two provisions of the Settlement Agreement (failure to employ Stepan Groninger and failure to escrow revenues from a company known as SunEnergy1-Asheville, LLC). Complaint at ¶ 22. However, under the clear and unambiguous terms of the contract, the only requirement for application of the Release is Plaintiff's receipt of the Payment. As the Business Court has already concluded, there is no dispute that Plaintiff received and retained the Payment and the Release applies with full force.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss" (document #7) be **GRANTED and** that the Complaint be **DISMISSED WITH PREJUDICE**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo

review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the parties' counsel; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: October 21, 2011

David S. Cayer
United States Magistrate Judge